An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1060

Filed 15 July 2026

Wake County, No. 21CR204763-910

STATE OF NORTH CAROLINA

v.

RIGOBERTO MATEOS MENDEZ, Defendant.

Appeal by Defendant from judgment entered 12 April 2024 by Judge A. Graham Shirley in Wake County Superior Court. Heard in the Court of Appeals 9 September 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Amber I. Davis, for the State.*

> *Yoder Law PLLC, by Jason Christopher Yoder, for Defendant-Appellant.*

CARPENTER, Judge.

Rigoberto Mateos Mendez ("Defendant") appeals from judgment entered after a jury found him guilty of two counts of statutory sex offense with a child and one count of taking indecent liberties with a child. Defendant requests that we grant his petition for writ of certiorari ("PWC") and argues: (1) the trial court plainly erred by allowing a police officer to testify that the Wake County Department of Social

Services ("DSS") had substantiated abuse; or (2) alternatively, he received ineffective assistance of counsel ("IAC"). After careful review, we deny Defendant's PWC and dismiss the appeal.

## I. Factual & Procedural Background

On 20 April 2023, a Wake County grand jury indicted Defendant on two counts of statutory sex offense with a child and one count of taking indecent liberties with a child. Defendant's case proceeded to trial on 9 April 2024, and the evidence tended to show the following.

Ellen[1] was born in September 2007. When Ellen was six or seven years old, she moved to North Carolina with her mother, Linda,[2] and younger brother to live with Defendant. At the time, Linda and Defendant were dating. In August 2014, Defendant and Linda had a daughter.

According to Ellen, Defendant was "a very angry person." For example, Ellen saw Defendant hit her brother for jumping on the bed. Ellen also heard Linda and Defendant argue on a regular basis.

In 2015, when Ellen was eight or nine years old, Linda began working nights at a gas station. While Linda worked, Defendant gave Ellen his phone to watch YouTube videos on his and Linda's bed. On more than one occasion, Defendant

---

[1] A pseudonym is used to protect the identity of the minor child and for ease of reading. *See* N.C. R. App. P. 42(b) (2025).

[2] For the same reasons, a pseudonym is used for the mother.

instructed Ellen to "lie down next to him . . . ." Defendant also put his hand on her "breast area" and "in her vaginal areas." On one occasion, Ellen felt Defendant's penis go inside her "butthole." At first, Ellen did not understand what was happening or realize that Defendant's behavior was wrong. Ellen learned from her health class, however, that Defendant was abusing her, but she did not immediately disclose it. Defendant instructed Ellen not to do so, and she feared he would "do something to [her] mom."

In 2018, Linda drove the family home from a wedding. Defendant was "really drunk" and "kept saying that he was going to kill [Linda]" during the drive. Defendant also opened and closed the car doors while the car was in motion. When they arrived at home, Defendant exited the car and opened Ellen's car door. Defendant then pulled Ellen's hair "while [she] still had [her] seat belt on, trying to like, get [her] out of the car." Following the incident, Defendant moved out of the family home, but he eventually returned.

In 2019, Defendant and Linda's relationship ended, and she obtained a restraining order against Defendant. Thereafter, Linda and Defendant began exchanging custody of Ellen's younger sister at the police station. Out of concern for her younger sister's safety, Ellen told her brother about the abuse she endured. Ellen and her brother sent messages to two of their aunts disclosing Defendant's actions toward Ellen. Linda saw the messages and took Ellen to the police station.

At the station, Ellen spoke to police officers. The department assigned Officer

Jacob West, a detective with the Cary Police Department, to the case. Officer West requested a child medical evaluation and made a referral to DSS. The SAFEchild Advocacy Center handled Ellen's forensic interview and referred Ellen to a therapist. The independent therapist, who specialized in trauma-focused cognitive behavioral therapy, evaluated Ellen and treated her for two years.

On cross-examination, defense counsel asked Officer West:

> **DEFENSE COUNSEL:** Do you know what [the DSS investigator] did as part of this case? Sorry.
>
> **WITNESS:** So, she -- do I know what she did specifically in this case?
>
> **DEFENSE COUNSEL:** Yes.
>
> **WITNESS:** I don't. I don't remember exactly what she did. I do know that she did have home visits with the family and that ultimately at the conclusion of her investigation, they substantiated abuse, because I got that letter in the mail.

On 12 April 2024, the jury found Defendant guilty of all charges. The trial court imposed consecutive sentences of: 300 to 420 months for the first count of statutory sex offense with a child; 300 to 420 months for the second count of statutory sex offense with a child; and sixteen to twenty-nine months for indecent liberties with a child. Defense counsel gave oral notice of appeal in open court after the jury's verdict but prior to entry of judgment and sentencing.

## II. Jurisdiction

As an initial matter, we must first determine whether we have jurisdiction to

address this appeal. Under Rule 4 of the North Carolina Rules of Appellate Procedure, notice of appeal from a criminal action may be taken by either "giving oral notice of appeal at trial" or filing written notice of appeal within fourteen days after entry of judgment. N.C. R. App. P. 4(a) (2025). "An oral notice of appeal given before entry of the final judgment violates Rule 4 . . . ." *State v. Jones*, 296 N.C. App. 512, 515, 909 S.E.2d 373, 376 (2024) (citations omitted). Because "compliance with the requirements of Rule 4(a)(2) is jurisdictional[,]" *State v. McCoy*, 171 N.C. App. 636, 638, 615 S.E.2d 319, 321 (2005), failure to comply "precludes the appellate court from acting in any manner other than to dismiss the appeal[,]" *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 197, 657 S.E.2d 361, 365 (2008).

Defendant concedes that his oral notice of appeal was premature and thus defective. *See Jones*, 296 N.C. App. at 515, 909 S.E.2d at 376. As a result, Defendant filed a PWC requesting that we reach the merits of his appeal.

A PWC is a "prerogative writ[ ]" that we may issue to aid our jurisdiction. *See* N.C. Gen. Stat. § 7A-32(c) (2025). Issuing a PWC, however, is an extraordinary remedy to correct errors of law. *See Cryan v. Nat'l Council of YMCAs*, 384 N.C. 569, 572, 887 S.E.2d 848, 851 (2023).Accordingly, a petitioner must satisfy "a two-factor test." *Id.* at 572, 887 S.E.2d at 851. "First, a writ of certiorari should issue only if the petitioner can show 'merit or that error was probably committed below.' " *Id.* at 572, 887 S.E.2d at 851 (quoting *State v. Ricks*, 378 N.C. 737, 741, 862 S.E.2d 835, 839 (2021)). "Second, a writ of certiorari should issue only if there are 'extraordinary

circumstances' to justify it." *Id.* at 572–73, 887 S.E.2d at 851 (quoting *Moore v. Moody*, 304 N.C. 719, 720, 285 S.E.2d 811, 812 (1982)).

## A. Officer Testimony

In his PWC, Defendant argues that the trial court plainly erred because Officer West's testimony was inadmissible on two grounds: hearsay and improper vouching. The State contends that the invited error doctrine applies because Defendant elicited Officer West's response on cross-examination, thus waiving the issue on appeal. We agree with the State.

"In order to preserve an issue for appeal, a defendant must have made a timely motion or objection to the trial court." *State v. Koke*, 264 N.C. App. 101, 106, 824 S.E.2d 887, 891 (2019) (citing N.C. R. App. P 10(a)(1)). This Court may, however, review unpreserved issues that are "specifically and distinctly" briefed as plain error, involving "either (1) errors in the judge's instructions to the jury, or (2) rulings on the admissibility of evidence." *State v. Gregory*, 342 N.C. 580, 584, 467 S.E.2d 28, 31 (1996) (citations omitted). To establish plain error, a defendant has the burden to make three showings:

> First, the defendant must show that a fundamental error occurred at trial. Second, the defendant must show that the error had a probable impact on the outcome, meaning that absent the error, the jury probably would have returned a different verdict. Finally, the defendant must show that the error is an exceptional case that warrants plain error review, typically by showing that the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*State v. Reber*, 386 N.C. 153, 158, 900 S.E.2d 781, 786 (2024) (cleaned up). "[A] defendant cannot raise the issue of plain error on appeal for evidence which he elicited during cross-examination of the witness." *State v. Gillard*, 386 N.C. 797, 825–26, 909 S.E.2d 226, 254 (2024) (citing *State v. Rivers*, 324 N.C. 573, 575–76, 380 S.E.2d 359 (1989)). "Statements elicited by a defendant on cross-examination are, even if error, invited error," *State v. Gobal*, 186 N.C. App. 308, 319, 651 S.E.2d 279, 287 (2007), and " 'a defendant who invites error has waived his right to all appellate review concerning the invited error, including plain error review[,]' " *State v. Miller*, 289 N.C. App. 429, 433, 889 S.E.2d 231, 234 (2023) (quoting *State v. Crane*, 269 N.C. App. 341, 343, 837 S.E.2d 607, 608 (2020)).

On the other hand, if a witness's answer is nonresponsive—exceeding the scope of the question or failing to answer the question—it is objectionable because it was not elicited, and the defendant must move to strike to fully preserve the issue of admissibility. *See State v. Wilkerson*, 363 N.C. 382, 412, 683 S.E.2d 174, 192–93 (2009).

Here, Defendant's framing of the question was broad enough to elicit a wide variety of responses, including those given by Officer West. Therefore, we conclude that Defendant invited the error and waived appellate review, which does not constitute error or merit. *See Miller*, 289 N.C. App. at 433, 889 S.E.2d at 234. Even assuming *arguendo* that Officer West's testimony was nonresponsive, we cannot say

the trial court fundamentally erred by failing to intervene amidst a strategic line of questioning on cross. *See Wilkerson*, 363 N.C. at 412–13, 683 S.E.2d at 193.

In sum, Defendant invited any error because defense counsel elicited the challenged testimony on cross-examination, thus waiving appellate review. *See Gillard*, 386 N.C. at 825–26, 909 S.E.2d at 254; *Miller*, 289 N.C. App. at 433, 889 S.E.2d at 234. As a result, Defendant did not meet his initial burden to show merit or error, much less plain error. *See Cryan*, 384 N.C. at 572, 887 S.E.2d at 851; *see also Reber*, 386 N.C. at 158, 900 S.E.2d at 786.

**B. IAC**

In the alternative, Defendant argues that he received IAC because defense counsel elicited testimony that DSS "substantiated abuse." We disagree.

We review IAC claims de novo. *State v. McDougald*, 279 N.C. App. 25, 31, 862 S.E.2d 877, 882 (2021). "Under a de novo review, this Court 'considers the matter anew and freely substitutes its own judgment for that of the lower tribunal.'" *State v. Miller*, 292 N.C. App. 519, 521, 898 S.E.2d 792, 795 (2024) (quoting *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008)).

To establish IAC, a defendant must prove that counsel's performance was "deficient" and prejudicial. *State v. Allen*, 360 N.C. 297, 316, 626 S.E.2d 271, 286 (2006). "Deficient performance may be established by showing that 'counsel's representation fell below an objective standard of reasonableness.'" *Id.* at 316, 626 S.E.2d at 286 (quoting *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S. Ct. 2527, 2535,

156 L. Ed. 2d 471, 484 (2003)). To show prejudice, a defendant must prove " 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* at 316, 626 S.E.2d at 286 (quoting *Wiggins*, 539 U.S. at 534, 123 S. Ct. at 2541, 156 L. Ed. 2d at 493).

" '[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.' " *State v. Givens*, 246 N.C. App 121, 124, 783 S.E.2d 42, 45 (2016) (quoting *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 2065, 80 L.Ed. 2d 674, 694–95 (1984)). Indeed, " '[i]neffective assistance of counsel claims are not intended to promote judicial second-guessing on questions of strategy as basic as the handling of a witness.' " *State v. Ballard*, 283 N.C. App. 236, 247, 872 S.E.2d 557, 566 (2022) (quoting *State v. Lowery*, 318 N.C. 54, 68, 347 S.E.2d 729, 739 (1986)).

Here, Defendant has not meet his burden in showing IAC. *See Allen*, 360 N.C. at 316, 626 S.E.2d at 286. He failed to establish that defense counsel's decision to elicit the testimony was objectively unreasonable because the record reveals a clear strategy to discredit the DSS investigator. *See id.* at 316, 626 S.E.2d at 286; *Ballard*, 283 N.C. App. at 247, 872 S.E.2d at 566. Further, it appears from the record that defense counsel's failure to move to strike Officer West's response was a strategic decision to avoid further highlighting the testimony. *See Givens*, 246 N.C. App at

124, 783 S.E.2d at 45. Even assuming defense counsel's strategic decisions were unreasonable, Defendant failed to show a reasonable probability of a different result due to the extensive evidence of guilt, including Ellen's testimony and messages. *See Allen*, 360 N.C. at 316, 626 S.E.2d at 286. Thus, there is no need for additional investigation, and we deny Defendant's IAC claim. *See id.* at 316, 626 S.E.2d at 286.

## III. Conclusion

Defendant has not shown merit or that error was probably committed below. *See Cryan*, 384 N.C. at 572, 887 S.E.2d at 851. Accordingly, we deny Defendant's PWC and dismiss his appeal.

DISMISSED.

Judges COLLINS and FLOOD concur.

Report per Rule 30(e).